UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. **6:22-CR-26-REW** (Eastern District of Kentucky)
**2:21-CR-107-CLC** (Eastern District of Tennessee)

UNITED STATES OF AMERICA                         PLAINTIFF

V.                            **PLEA AGREEMENT**

**NATHAN RAY TUCKER,**
    **aka CLARKE RICHARDSON**                            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rules of Criminal Procedure 11(c) and 20, the Defendant will enter a guilty plea to Count One of the Indictment against him in the Eastern District of Kentucky (EDKY), that is Criminal Action No. 7:22-CR-26-REW, as well as Count One of the Superseding Indictment against him in the Eastern District of Tennessee (EDTN) – that is Criminal Action No. 2:21-CR-107-CLC. Count One of the EDKY Indictment charges conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count One of the EDTN Superseding Indictment charges conspiracy to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss any additional counts and/or underlying indictments from both Districts, and will not bring additional charges against

the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the EDKY or EDTN, unless the Defendant were to breach this Agreement.

2. The essential elements of Count One of the EDKY Indictment are:

(a) That two or more persons conspired or agreed to distribute a mixture or substance containing methamphetamine, a Schedule II controlled substance; and

(b) That the Defendant knowingly and voluntarily joined in this conspiracy; and

(c) That the amount of the mixture or substance containing a detectable amount of methamphetamine that was attributable to the Defendant as a result of the Defendant's own conduct and the conduct of other co-conspirators reasonably foreseeable to the Defendant was at least 500 grams.

The essential elements of Count One of the EDTN Indictment are:

(a) That two or more persons conspired or agreed to distribute methamphetamine, a Schedule II controlled substance; and

(b) That the Defendant knowingly and voluntarily joined in this conspiracy; and

(c) That the amount of methamphetamine that was attributable to the Defendant as a result of the Defendant's own conduct and the conduct of other co-conspirators reasonably foreseeable to the Defendant was at least 50 grams.

3. The United States could prove the following facts that establish the essential elements of the foregoing offenses beyond a reasonable doubt, and the Defendant admits these facts:

As to the EDKY charges:

(a) Beginning in or about August of 2020, the exact date unknown, and

continuing through on or about December 9, 2020, in Laurel County, Kentucky - which is located in the Eastern District of Kentucky – and elsewhere, the Defendant conspired or agreed with others to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (meth), a Schedule II controlled substance.

(b) Specifically, within the timeframe of the conspiracy, the Defendant was obtaining quantities of meth from an out-of-state source of supply. The Defendant brought these drugs to various mid- and street-level drug dealers, including several in the Laurel County, Kentucky area.

(c) Once there, the Defendant distributed the drugs to these persons for profit. In turn, these individuals would then distribute the drugs to other low-level drug dealers and/or end drug users in surrounding communities.

(d) By engaging in this conduct, the Defendant had a criminal agreement with his source of supply, his codefendant, and others to distribute meth.

(e) On or about November 17, 2020, deputies with the Laurel County Sheriff's Office (Laurel SO) conducted a traffic stop in which they seized approximately 2 ounces of meth from persons in the vehicle. The passengers identified the source of supply for this meth as a man named "Clarke" from Georgia. They further advised that Clarke was staying at a nearby hotel, and later identified pictures of the Defendant, Nathan Ray Tucker, as the man they knew as Clarke.

(f) By way of follow-up, deputies went to the hotel and were told by staff that Room #123 had a significant amount of foot traffic and that the smell of marijuana had been coming from the room. Deputies then went to the room to conduct a knock-and-talk. While on their way to the Room #123, deputies observed a female subject exit the room and walk to a gold BMW sedan in the parking lot. The Defendant was sitting in the driver's seat of the vehicle. Deputies approached the vehicle and asked the Defendant for his name. The Defendant replied "Nobody." The Defendant then exited the vehicle and then fled on foot. He was not apprehended.

(g) Following this encounter, deputies went back to the room to conduct the knock-and-talk. Deputies could smell marijuana coming from the room. Codefendant Brittany Caldwell answered the door and the deputies could see various drug paraphernalia in plain view scattered around the hotel room. Deputies then obtained a state warrant for the hotel room.

(h) During the search, deputies located and seized syringes, glass pipes, a small safe/box, meth, plastic baggies, suspected LSD pills, and marijuana. In all, deputies located and seized approximately 3-4 ounces of meth from the room. Deputies also located and seized medication bottles in the name of "Clarke Richardson," over $8,000 in U.S. currency concealed inside two golf gloves, and the Defendant's driver's license.

(i) On or about December 1, 2020, the DEA utilized a cooperating witness to arrange for the purchase of 1 ounce of meth from the Defendant for $700 through Facebook Messenger. However, on December 4, 2020, before this transaction could occur, the cooperating witness advised law enforcement that the Defendant would be meeting with another customer at the Lafollette (TN) Country Club to conduct a large meth transaction. Armed with this information, law enforcement personnel went to the Lafollette Country Club in an attempt to locate and speak with the Defendant.

(j) Law enforcement located the Defendant on the golf course of the Country Club and approached him. The Defendant again fled on foot and was not caught. Officers located and seized approximately 6 ounces of meth and around $2,500 in U.S. currency from the golf cart.

(k) As a result of this investigation, law enforcement personnel seized approximately 255 grams of a mixture or substance containing meth. The overall investigation revealed that the Defendant is responsible for approximately 855 grams of a mixture or substance containing meth over the span of this conspiracy.

As to the EDTN charges:

(a) Beginning in or about January of 2020, the exact date unknown, and continuing through in or about August of 2020, the exact date unknown, in or around Washington County, Tennessee - which is located in the Eastern District of Tennessee – and elsewhere, the Defendant conspired or agreed with others to distribute 50 grams or more of methamphetamine (meth), a Schedule II controlled substance.

(b) Specifically, within the timeframe of the conspiracy, the Defendant was obtaining quantities of meth from an out-of-state source of supply. The Defendant brought these drugs to various mid- and street-level drug dealers in the Washington County area, including codefendant Kacei Pierce.

(c) Once there, the Defendant and Pierce distributed the drugs to these

4

persons for profit. In turn, these individuals would then distribute the drugs to other low-level drug dealers and/or end drug users in surrounding communities.

(d) By engaging in this conduct, the Defendant had a criminal agreement with his source of supply, his codefendant, and others to distribute meth.

(e) On April 26, 2020, officers with the Johnson City Police Department (JCPD) responded to a complaint at a Walgreens in Johnson City. When they arrived, officers found codefendant Kacei Pierce passed out in the driver's seat of a Cadillac registered to the Defendant. During the ensuing investigation, officers asked for permission to search Pierce's purse. Pierce consented, but as an officer was walking around the vehicle, he observed Pierce remove a plastic bag containing a crystalline substance that resembled meth from the purse. Officers seized the bag and the substance, which was later tested and found to be 72.84 grams of meth. Pierce admitted that she had recently started selling meth.

(f) Pierce later gave a post-Miranda statement in which she further admitted that she had been living with the Defendant and that they were regularly traveling from Tennessee to Georgia to obtain between one-half and one kilogram of meth per trip, which they would bring back to Tennessee to distribute.

(g) In June of 2020, the JCPD Vice Unit began an undercover investigation into the Defendant's drug trafficking operations. Through this investigation, the JCPD utilized a cooperating witness to make 3 controlled drug transactions from the Defendant. On June 9, 2020, law enforcement purchased 6.32 grams of meth from the Defendant. On June 19, 2020, law enforcement purchased 27.66 grams of meth from the Defendant. On June 25, 2020, law enforcement purchased an additional 53.74 grams of meth from the Defendant. Each of these buys were recorded and surveilled by law enforcement.

(h) Also on June 25, 2020, JCPD obtained a state search warrant for a hotel room occupied by the Defendant. There, officers seized a drug ledger, syringes, digital scales, and approximately 1,172 grams of meth.

(i) As a result of this investigation, law enforcement personnel bought and/or seized approximately 1,332.56 grams of meth.

4. The statutory punishment for both of the foregoing offenses is not less than

10 years nor more than life imprisonment, a fine of not more than $10,000,000, and a term of supervised release of at least 5 years. A mandatory special assessment of $200 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk as directed by the Court.

    5.    Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

> (a) The United States Sentencing Guidelines (U.S.S.G.) manual in effect at the time of sentencing will determine the Defendant's guidelines range.
>
> (b) Pursuant to U.S.S.G. § 1B1.3, the offense conduct in the Eastern District of Kentucky and the Eastern District of Tennessee is part of the same course of conduct and/or common scheme or plan. Due to this, the sentence for each conviction should run concurrently with one another.
>
> (c) Pursuant to U.S.S.G. § 2D1.1, the base offense level based on the combined converted drug weight is a level 32 because the offenses involved at least 3,000 but less than 10,000 kilograms of converted drug weight.
>
> (d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

    6.    No agreement exists regarding the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

    7.    Except for claims of ineffective assistance of counsel, the Defendant waives

the right to attack collaterally the guilty plea, conviction, and sentence. The Defendant also waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the sentence.

8. If the Defendant violates any part of this Agreement, the United States in either District may void this Agreement and seek an Indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense(s) to which he/she is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he/she already has submitted. If the Defendant fails to surrender and forfeit the assets identified

for forfeiture herein, he/she consents to the forfeiture of any other property of his/hers up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his/her right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney's Offices for the Eastern District of Kentucky, the Eastern District of Tennessee, and the Defendant. The United States has not made any other promises to the Defendant.

11. Outside of the United States Attorneys' Offices for the Eastern District of Kentucky and the Eastern District of Tennessee, this Agreement does not bind the United States Attorney's Offices in any other districts, or any other federal, state, or local prosecuting authorities.

12. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

|  |  |  |
|---|---|---|
| Date: 3/28/24 | By: | CARLTON S. SHIER, IV<br>UNITED STATES ATTORNEY<br>EASTERN DISTRICT OF KENTUCKY<br><br>*[signature]*<br>W. Samuel Dotson<br>Assistant United States Attorney |
| Date: 3/27/24 | By: | FRANCIS M. HAMILTON, III<br>UNITED STATES ATTORNEY<br>EASTERN DISTRICT OF TENNESSEE<br><br>*[signature]*<br>Wayne Taylor<br>Assistant United States Attorney |
| Date: 3/26/24 |  | *[signature]*<br>Nathan Ray Tucker<br>Defendant |
| Date: 3/26/24 |  | *[signature]*<br>Michael B. Fox<br>Attorney for Defendant |

9